MARGARET A. MURRAY *vs.* PETER MURRAY
(and a companion case [1]).

Bristol.   October 26, 1942. — January 7, 1943.

Present: FIELD, C.J., DONAHUE, QUA, DOLAN, & COX, JJ.

*Marriage and Divorce,* Desertion.   *Insane Person.*

In a divorce proceeding brought by a husband, a previous commitment of him to a State hospital for the insane and his later release on parole subject to a condition that he was "not to try to contact" his wife "or in any way annoy her" must be assumed to have been regular and according to the requirements of G. L. (Ter. Ed.) c. 123; a finding by the judge hearing the libel that it "is obvious that that condition was at the instance of" the wife did not require a finding of improper conduct on her part in that respect.

Subsidiary findings by a judge of probate did not warrant a conclusion of desertion by his wife beginning with his release from a State hospital for the insane on parole subject to the condition that he was "not to try to contact" his wife "or in any way annoy her" and continuing for three consecutive years.

PETITION, filed in the Probate Court for the county of Bristol on May 18, 1939, for separate maintenance; also a

LIBEL, filed in the same court on April 14, 1941, for divorce.

The cases were heard together by *Hitch,* J.

*G. B. Goodman,* for Margaret A. Murray.

*T. M. Quinn,* for Peter Murray.

DOLAN, J.   The petitioner in the first case, for separate support, who is the libellee in the libel for divorce in the

---

[1] The companion case was by Peter Murray *vs.* Margaret A. Murray.

second case, appealed from the respective decrees entered in the Probate Court dismissing her petition for separate support, and decreeing nisi that a divorce be granted her husband for the cause of desertion by her on April 9, 1938.

The evidence is not reported but at the request of the appellant the judge filed a report of material facts covering both cases, which were tried together.

Material facts found by the judge are these. The parties were married in 1924. The husband was then fifty years of age and Mrs. Murray was then twenty-six years of age. Murray at that time was conducting a successful florist business. His business suffered reverses and he began to drink. Mrs. Murray also drank. After he suffered financial reverses the parties did not get along very well, particularly from 1934. They lived together however until December 22, 1936, when "because of chronic alcoholism" Murray was committed as insane to the Taunton State Hospital. "Mrs. Murray was responsible for his commitment." A conservator of his property was appointed on April 16, 1937, and that status continued until May 12, 1939, when a successor conservator was discharged. Murray was released from the hospital on parole on April 9, 1938, "on certain specified conditions, one of which was 'He is not to try to contact Mrs. Murray or in any way annoy her.'" The judge found that it "is obvious that that condition was at the instance of Mrs. Murray." Murray was finally discharged from the hospital in December, 1938. While he was in the hospital Mrs. Murray visited him on several occasions. He was friendly but blamed her for not trying to have him released, "which she did not do. On one of these visits she asked him about his money." She visited him two days before he was released on parole, but said nothing about his impending release. On the day of his release she did not meet him or send him any word or make any arrangements for his comfort. "So far as she was concerned he was abandoned to his own resources." On the same day that his conservator was discharged Mrs. Murray signed a petition for separate support. She "stated that if he would give her $30,000 she would call it quits,"

and told a neighbor that "it took a long time to get him here (that is, the Hospital) and that she would not let him out, and that she was never going to live with him." The parties have never lived together since. Murray was committed to the hospital on December 22, 1936. The judge further found that Mrs. Murray deserted Murray on April 9, 1938, the day he was released from the hospital on parole (a finding which we hold not to have been supported by the facts reported by the judge), that Murray had not been guilty of cruel and abusive treatment toward Mrs. Murray and had not deserted her. He made no finding that as alleged in the petition for separate support (filed May 18, 1939) Murray had failed without just cause to furnish suitable support for her. But upon all the facts properly found by the judge we think that there was no error in the action of the judge in dismissing the petition for separate support.

With respect to the divorce proceeding between the parties the allegations of the libel were that the libellee had been guilty of cruel and abusive treatment on or about December 22, 1936, and on divers other dates had been guilty of cruel and abusive treatment, that she had utterly deserted the libellant on December 22, 1936, and that the desertion had continued for three consecutive years next prior to the filing of the libel. The libel was filed on April 14, 1941.

In response to the libellee's motion for specifications, the libellant specified that the date of the alleged desertion by the libellee was December 22, 1936; that they were then living at a certain address in Fairhaven; and as the acts which constituted desertion, that "the libellee made it so unbearable for the libellant that he could not live with her, and said libellee arranged so that the said libellant was committed to the Taunton State Hospital." He also specified certain acts of cruel and abusive treatment on December 20, 1934, October 25, 1935, June 15, 1936, August 20, 1936, and December 22, 1936, in each instance specifying, as the place where those acts were committed, certain addresses in Fairhaven. The judge, however, did not find that the libellee had been guilty of cruel and abusive treat-

ment toward the libellant, but based the decree entered by him solely on his finding that she had deserted the libellant on April 9, 1938.

The libellee has argued that the decree nisi was erroneously entered because the libellant's specifications fixed the time of the alleged desertion as December 22, 1936, and the judge found that the libellee deserted the libellant on April 9, 1938. She has also argued in the alternative that the findings made by the judge do not support the conclusion reached by him that she had deserted the libellant.

Upon an appeal from a decree entered in the Probate Court, this court has "like powers and authority in respect thereto as upon an appeal in a suit in equity under the general equity jurisdiction," G. L. (Ter. Ed.) c. 215, § 9, and hence the question of variance between allegations and proof are properly before us without respect to whether the question was raised at the trial in the court below. While amendments to specifications may be allowed to conform to proof (see *Shea* v. *Crompton & Knowles Loom Works*, 305 Mass. 327, 328), in the instant case it would serve no useful purpose to allow an amendment of the specification as to the time of the alleged desertion to conform to that as of which the judge found that the libellee deserted the libellant, since we are of opinion that the subsidiary facts found by the judge do not support the conclusion of the judge that the libellee deserted the libellant.

There is nothing to show that the libellee improperly procured the commitment of the libellant to the State hospital on the date of the alleged desertion, at which time the judge has found that the parties were living together. It must be assumed that the proceedings for his commitment were regular and that the provisions of G. L. (Ter. Ed.) c. 123, relative to commitment of insane persons, were complied with. He was confined to the hospital as an insane person for almost sixteen months after his commitment before being released on parole. It is to be assumed that the authorities of the department of mental health acted upon their own judgment with relation to what was owed to the public and necessary for the protection of the

libellant in not releasing him until they did. The judge has found that the libellant was released from the hospital on specified conditions, among them that he was "not to try to contact Mrs. Murray or in any way annoy her." While in this connection the judge found that "It is obvious that that condition was at the instance of Mrs. Murray," yet, taking that to be so, there is nothing in the findings to show that, in seeking the imposition of that condition from the authorities, she was not acting in good faith for reasons which she must have satisfied the authorities were sound. The judge found that when the libellee visited the libellant at the hospital he was friendly but "blamed her for not trying to have him released, which she did not do." In this state of mind it would not be unreasonable to infer, having in view the mental condition of the libellant, that upon his release on parole reasonable conditions might be imposed properly by the department for her protection. In any event that was the judgment of the department, and no contention has been made that it may not properly impose reasonable conditions upon the release of a patient for the protection of an individual or the public generally. It would seem that such power is inherent in the department of mental health, for obvious reasons of public policy, while the patient is still subject to its control.

The findings of the judge that upon the libellant's release the libellee did not meet him or send him any word or make any arrangements for his comfort, and that at this time when he needed her help and companionship more than ever, she abandoned him to his own resources, are not sufficient to support a finding of desertion, particularly when regarded in the light of the condition imposed upon him by the department when he was released on parole. The finding that since he was precluded from seeking or calling on his wife he must have realized then that she had no further use for him, and that had she then shown any wifely consideration for him he would have welcomed it, in view of what has already been said would not support a conclusion of desertion by her at that time. He was not free to live with her then under the condition imposed upon

him by the department, which still retained supervision and control of him. Moreover, the finding is at odds with the specification of the libellant that the libellee made it so unbearable for him that he could not live with her. There is nothing in the findings to show that the libellant at that time or after his final discharge from the hospital, free from conditions, in December, 1938, made any overtures toward the resumption of marital relations with the libellee.

The finding in substance that the libellee told a neighbor that it took a long time to get the libellant into the hospital, that she would not let him out and that she never was going to live with him again, weighed with the fact that his retention in or release from the hospital must be taken to have rested in the sound discretion of the department, and with his own specification that prior to his commitment the libellee had made it so unbearable for him that he could not live with her, does not support a conclusion that the libellee had deserted him upon his release from the hospital.

Upon a careful consideration of the subsidiary findings of fact made by the judge, we are of opinion that they are insufficient to sustain his ultimate conclusion that the libellee has deserted the libellant and that the desertion continued for three consecutive years next prior to the filing of the libel as provided in G. L. (Ter. Ed.) c. 208, § 1, and that the entry of the decree nisi was erroneous.

It follows that the decree nisi of divorce must be reversed and instead that a final decree must be entered dismissing the libel. The decree dismissing the petition for separate support is affirmed.

*Ordered accordingly.*